UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| TODD THAYN,<br><br>Plaintiff,<br><br>v.<br><br> MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | ~~PROPOSED~~ MEMORANDUM OPINION AND ORDER<br><br>Case No. 2:10-cv-00634-DS<br><br>Honorable David Sam |

Todd Thayn appeals the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits under Title II of the Social Security Act (the Act), 42 U.S.C.§§ 401-433. Having considered the parties' briefs, the administrative record, the arguments of counsel, and the relevant law, the Court REVERSES and REMANDS the Commissioner's decision for further consideration.

## LEGAL STANDARDS

This Court's review is guided by the Act and is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record as a whole and whether the Commissioner applied the correct legal standards. *See Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). This Court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

1

## BACKGROUND

Todd Thayn, the plaintiff, filed an application for Disability Insurance Benefits on February 24, 2006. (T. 104-108). Mr. Thayn's claim was initially denied on July 25, 2006 (T. 68), and upon reconsideration on January 25, 2007. (T. 69). Mr. Thayn timely requested a hearing before an Administrative Law Judge ("ALJ") on March 23, 2007. (T. 79).

A hearing was held on July 1, 2008, in Salt Lake City, Utah before Administrative Law Judge, G. Alejandro Martinez. (T. 22). The ALJ issued a decision finding Mr. Thayn not disabled on July 19, 2008. (T. 8). In this decision, the ALJ acknowledged that Mr. Thayn suffered from the severe impairments of dysfunction of the wrists (failed carpal tunnel release surgery) and migraine headaches. (T. 13). However, he concluded that while these impairments might reasonably be expected to cause the symptoms and pain complained of by Mr. Thayn, he did not find Mr. Thayn's reports of the intensity, persistence, and limiting effects of these symptoms credible. (T. 15). In making this finding, the ALJ rejected the opinion of Mr. Thayn's long-time treating physician, Dr. J. Douglas Burrows, that Mr. Thayn could not perform repetitive motion with either hand and would be limited in his ability to grasp, perform fine manipulation, and reach. (T. 328). He also failed to include all Mr. Thayn's impairments in his residual functional capacity assessment. (T. 14).

On May 26, 2010, the Appeals Council denied Mr. Thayn's request for review of the ALJ's decision. (T. 1). This Appeals Council denial was the final administrative decision of the Commissioner of Social Security in this case. *See* 20 C.F.R. § 404.981.

## I.     The ALJ Failed to Properly Evaluate the Opinion of Mr. Thayn's Treating Physician.

Agency rulings and Social Security regulations clearly direct an ALJ toward the established process for deciding what weight to give treating source opinions. *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003). Social Security Ruling 96-2p establishes a two-step sequential process for determining the weight to be given to a treating physician's opinion. First, an ALJ must decide whether the opinion should be given controlling weight. *Watkins v. Barnhart*, 350 F.3d at 1300. The ALJ must determine whether the treating source opinion is "well-supported" by acceptable clinical and laboratory diagnostic techniques." Then, the ALJ must confirm that the opinion is consistent with other substantial evidence in the record. *Watkins v. Barnhart*, 350 F.3d at 1300.

The reviewing court *must* remand a case where the ALJ fails to explain in the decision both the weight given to a treating source's opinions, and the reasons for assigning that particular weight. *Watkins v. Barnhart*, 350 F. 3d at 1301. Even if the ALJ does not give treating source opinions controlling weight, the opinions are still entitled to deference, and the ALJ must still evaluate those opinions using the factors found in 20 C.F.R. § 404.1527 and 416.927. [1] *Watkins*, 350 F.3d at 1300. After considering the factors, the ALJ must provide good reason in the decision for the weight he gives to the treating source's opinion. *Watkins*, 350 F.3d at 1301. In

[1] The factors are (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1301.

this case, the ALJ failed to provide good reasons, supported by substantial evidence, to support his rejection of the opinions of Mr. Thayn's long-time treating physician, Dr. J. Douglas Burrows.

Dr. Burrows is an orthopedic surgeon, specializing in surgeries of the hand. Mr. Thayn began seeing Dr. Burrows in January 2005. (T. 329). Dr. Burrows performed carpal tunnel releases on both Mr. Thayn's wrists. (T. 290, 298). Mr. Thayn consistently sought treatment from Dr. Burrows for more than three years. (T. 285-308, 323-326). In June 2008, Dr. Burrows offered his opinion as to Mr. Thayn's functional limitations due to his carpal tunnel syndrome. (T. 327-328). Dr. Burrows opined that Mr. Thayn would have limitations in doing repetitive reaching, handling, and fingering. (T. 328). He also stated that he could only use his hand 10% of the time and his fingers 10% of the time. (T. 328).

At the ALJ hearing, counsel for Mr. Thayn asked the vocational expert if a person with these limitations could perform Mr. Thayn's past relevant work. (T. 63). She stated they could not. Counsel then asked if any jobs would be available to Mr. Thayn with these limitations. She stated there would be no jobs available. (T. 63). Therefore, the limitations opined by Dr. Burrows would direct a finding of disabled.

However, the ALJ rejected Dr. Burrows' opinions. (T. 17). The ALJ found that Dr. Burrows's opinions were contrary to the preponderance of evidence and unsupported by his own notes which "do not document any limitation in repetitive motions." (T. 17). These findings are not supported by the record.

First, it is important to note that Dr. Burrows' is not just Mr. Thayn's treating source, but has seen him consistently for more than three years, performed two surgeries on Mr. Thayn, and is a specialist in hand surgeries. Among the factors the ALJ is required to consider are length of

4

the treating relationship, frequency of the treating relationship, whether the treating source is a specialist, and the nature of the treatment provided. *Watkins*, 350 F.3d at 1301. It is also untrue that his progress notes do not document limitations in repetitive motion. Dr. Burrows noted repeatedly throughout the record that Mr. Thayn could not perform repetitive motion with bilateral hands. (T. 286, 287, 288, 289, 292, 293, 294, 295, 296).

Dr. Burrows' progress notes show that Mr. Thayn's symptoms persisted. (T. 286). Examinations showed that carpal compression testing and Phalen's testing produced increased parathesisa into the index fingers bilaterally. (T. 286). They showed that when Mr. Thayn stopped using the numerous medications he was taking, he had a worsening of his symptoms. (T. 323). The ALJ's rejection of these opinions is an error.

Instead of relying on the opinions of this long-time treating physician, the ALJ relied on his own interpretation of test results from a one-time examining source. The ALJ assessed a residual functional capacity assessment that included "no limitations in fine or gross motor dexterity" and no limitations in operating "hand and foot controls within the limits of light exertional work." (T. 14). This assessment was based in large part on the testing of Dell Felix, P.T., someone the ALJ referred to as "a recognized expert in physical therapy testing." (T. 15). The ALJ stated he was giving "Mr. Felix's opinions great weight." (T. 16). However, there are multiple problems with the ALJ's reliance on the testing of Mr. Felix, a physical therapist.

Most importantly, a physical therapist is not considered "an acceptable medical source" under Social Security guidelines. SSR 06-03p. In this case, the ALJ has used the observations of a physical therapist Mr. Thayn saw once, over the opinions of a treating physician who is a specialist in hand impairments that Mr. Thayn has seen for more than three years. Reports from sources such as a physical therapist "are not entitled to the same significant weight as reports by

5

a physician." *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) *citing* 20 C.F.R. §404.1513(a) & (e). While there may be circumstances in which it is appropriate to give more weight to a medical source that is not considered an "acceptable medical source", it is not appropriate in this case. For instance, if a physical therapist has seen a claimant more often than the treating physician, it may be reasonable to give their opinion more weight. 20 C.F.R. § 404. 1527(d)(2); SSR 96-2p. That is not the case here, where the physical therapist only saw Mr. Thayn once.

It is also important to note, as the ALJ apparently did not, that Dell Felix was not involved in Mr. Thayn's testing. A review of the records shows that Sara Marchant, a physical therapist, administered the testing. There is no evidence that Mr. Thayn saw Dell Felix at all. (T. 235-258, 259-269). While Mr. Felix signed a letter reiterating the test results, there is no evidence that Mr. Thayn was examined or tested by anyone other than Ms. Marchant. *Id.* The ALJ makes no mention of Ms. Marchant's qualifications as reason for accepting her test results over those of a medical specialist in hand impairments.

The next problem with the ALJ's reliance on the testing of Ms. Marchant, is that it was performed in May 2006. (T. 235-258, 259-269). This is almost two years before Mr. Thayn's treating physician offered his opinion as to Mr. Thayn's limitations. (T. 327-328). "A treating physician's most recent medical reports are highly probative." *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Clearly, Mr. Thayn's condition may have progressed during that time and those changes are not reflected in the testing of Ms. Marchant.

Furthermore, Dr. Burrows's opinion as to Mr. Thayn's functional limitations includes not only limitations caused by carpal tunnel syndrome, but also, limitations caused by the medications he takes for this condition. (T. 327). At the hearing, Mr. Thayn stated that the

Neurontin makes him lethargic and unable to concentrate. (T. 41). The testing done by Ms. Marchant offered no opinion as to how Mr. Thayn's medications impact his ability to function.

In fact, Ms. Marchant does not provide any explanation of how the test results might apply in the work setting. For instance, the test results showed that Mr. Thayn typed for 15 minutes and was observed rubbing his wrists after typing. (T. 242). Ms. Marchant does not opine that these results would indicate that Mr. Thayn could perform repetitive hand movements for an 8-hour workday. There is nothing in the report to indicate that Mr. Thayn could perform repetitive motions throughout the day.

In total, Mr. Thayn performed 1 hour and 45 minutes of activities, with evidence of discomfort throughout the testing. (T. 244). Ms. Marchant did not opine that Mr. Thayn could perform these activities throughout an 8 hour day. However, the ALJ interpreted these tests to mean that Mr. Thayn could perform repetitive motion throughout an 8 hour workday. (T. 14). This is his lay opinion and it is not supported by the record. The record shows that Mr. Thayn's treating physician opined that he cannot perform repetitive activities more than 10% of an eight hour work day. (T. 328). Mr. Thayn testified that on a good day, he could probably work for an hour or two, but if he tried to work beyond that, his hands would become so painful he couldn't do anything. (T. 48-49). All this evidence contradicts the ALJ's lay opinion, which is an error. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996)(finding that the ALJ is not permitted to substitute his or her own opinion for that of the claimant's doctor.) While the ALJ is permitted to draw reasonable inferences from the record his presumptions and speculations cannot be substituted for evidence. *Pinnt v. Chater*, 988 F. Supp. 1354, 1360 (D. Colo. 1997).

In addition, the Commissioner suggested that Dr. Burrows's opinions were contradicted by the examination of Dr. Seema Sandhu. Def. Br. at 7. However, Dr. Sandhu's test was an

Neurontin makes him lethargic and unable to concentrate. (T. 41). The testing done by Ms. Marchant offered no opinion as to how Mr. Thayn's medications impact his ability to function.

In fact, Ms. Marchant does not provide any explanation of how the test results might apply in the work setting. For instance, the test results showed that Mr. Thayn typed for 15 minutes and was observed rubbing his wrists after typing. (T. 242). Ms. Marchant does not opine that these results would indicate that Mr. Thayn could perform repetitive hand movements for an 8-hour workday. There is nothing in the report to indicate that Mr. Thayn could perform repetitive motions throughout the day.

In total, Mr. Thayn performed 1 hour and 45 minutes of activities, with evidence of discomfort throughout the testing. (T. 244). Ms. Marchant did not opine that Mr. Thayn could perform these activities throughout an 8 hour day. However, the ALJ interpreted these tests to mean that Mr. Thayn could perform repetitive motion throughout an 8 hour workday. (T. 14). This is his lay opinion and it is not supported by the record. The record shows that Mr. Thayn's treating physician opined that he cannot perform repetitive activities more than 10% of an eight hour work day. (T. 328). Mr. Thayn testified that on a good day, he could probably work for an hour or two, but if he tried to work beyond that, his hands would become so painful he couldn't do anything. (T. 48-49). All this evidence contradicts the ALJ's lay opinion, which is an error. *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996)(finding that the ALJ is not permitted to substitute his or her own opinion for that of the claimant's doctor.) While the ALJ is permitted to draw reasonable inferences from the record his presumptions and speculations cannot be substituted for evidence. *Pinnt v. Chater*, 988 F. Supp. 1354, 1360 (D. Colo. 1997).

In addition, the Commissioner suggested that Dr. Burrows's opinions were contradicted by the examination of Dr. Seema Sandhu. Def. Br. at 7. However, Dr. Sandhu's test was an

overall neurological exam and did not include the more specialized testing of Mr. Thayn's upper extremities performed by Dr. Burrows. (T. 310-312). Dr. Sandhu's notes show that she performed a general neurologic exam with no specific focus on Mr. Thayn's hands. *Id.* Furthermore, she gave no opinion as to his functional limitations, so there is no contradiction to Dr. Burrows's opinions. *Id.* In fact, like Dr. Burrows, Dr. Sandhu directed that Mr. Thayn wear wrist splints daily and take medication to deal with his carpal tunnel symptoms. (T. 312). Certainly, Dr. Sandhu's assessment does not support the ALJ's finding that Mr. Thayn has no limitations in his ability to use his hands. (T. 14).

In this case, there is no evidence supporting the ALJ's conclusion that Dr. Burrows's opinions were contradicted by other evidence of record and were not supported by his own notes. Therefore, this case must be reversed and remanded for further consideration of the medical opinions.

## II. The ALJ Failed to Include All Mr. Thayn's Impairments in his Residual Functional Capacity Evaluation.

Social Security Ruling 96-8p requires that when making findings concerning the claimant's residual functional capacity ("RFC"), the ALJ must "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical fact (e.g. laboratory findings) and non-medical evidence (e.g. daily activities, observations)." This assessment must be done on a function by function basis and include both exertional and nonexertional limitations for both severe and nonsevere impairments. SSR 96-8p. Finally, the RFC must include a resolution of any conflicts in the evidence. SSR 96-8p. The ALJ is also required to provide specific support with references to the record for rejection of a claimant's testimony. *McGoffin v. Barnhart*, 288 F. 3d 1248, 1254 (10th Cir. 2002). If the ALJ fails to provide the specific support then the reviewing court will remand the case for further

8

consideration. *Id.* In this case, the ALJ failed to include any limitations in his residual functional capacity assessment for Mr. Thayn's carpal tunnel syndrome and migraine headaches despite finding that they were severe impairments at step 2 of the sequential evaluation.

The ALJ assessed a residual functional capacity assessment that included "no limitations in fine or gross motor dexterity" and no limitations in operating "hand and foot controls within the limits of light exertional work." (T. 14). However, there are no medical opinions in the file that would support the ALJ's finding that Mr. Thayn has no limitations in his using his hands.

Mr. Thayn's treating physician opined that Mr. Thayn could only use his hands 10 % of the workday. (T. 328). The physical therapist testing, on which the ALJ relied so heavily, offered no opinion or guidance as to how much of the workday Mr. Thayn could be expected to perform as he had on the testing. (T. 235-258). The DDS physicians opined that Mr. Thayn would have limited fingering and fine manipulation. (T. 274, 322). Mr. Thayn testified that on a good day, he could probably work for an hour or two, but if he tried to work beyond that, his hands would become so painful he couldn't do anything. (T. 48-49). In fact there is nothing in the file that supports the ALJ's finding that Mr. Thayn has no limitations in fine motor dexterity. (T. 16).

The ALJ found that Mr. Thayn's carpal tunnel was a severe impairment. Therefore, it makes no sense that he would not include any limitations in the RFC for that impairment. *See Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995)(The 10th Circuit held that the ALJ erred in not including any limitation to the claimant's hands, since the claimant's primary complaint involved bilateral carpal tunnel syndrome which required surgery).

Similarly, the ALJ failed to include any limitations related to Mr. Thayn's headaches in his RFC assessment. The ALJ found that Mr. Thayn's headaches were a severe impairment. By

definition, this would mean they had more than a minimal impact on Mr. Thayn's ability to work. SSR 85-28. Mr. Thayn testified that he has a headache about once a week. (T. 51). These headaches will usually last 4-5 hours. (T. 51). When he gets a headache, he takes medication and goes to bed. (T. 51). There is no evidence that contradicts Mr. Thayn's report of symptoms regarding his headaches. However, the ALJ failed to include any limitations in his RFC assessment that would address the impact they would have on Mr. Thayn's ability to work. This is an error.

For these reasons, this case must be reversed and remanded with to allow the ALJ to evaluate Mr. Thayn's residual functional capacity based on all the impairments and limitations established by the record.

## CONCLUSION

Having determined that the Commissioner's decision is not based on substantial evidence or free of error, the Commissioner's decision is REVERSED and REMANDED for further consideration of the medical opinion evidence as directed by Social Security Ruling 96-2p. This court also finds that Mr. Thayn's residual functional capacity must be re-evaluated to include all impairments as directed by Social Security Ruling 96-8p.

DATED this ____29th day____ of ____March____, 2011.

_____
Honorable David Sam
United States District Court Judge